Although I concur in the judgment affirming the trial court'ssuppression order, my reasoning differs somewhat from that expressed inthe opinion of this court.
 To begin with, I agree with the opinion of this court that when DeputyStatzer turned on his overhead lights, the encounter that resulted was astop, rather than a consensual encounter. However, I base my conclusionnot upon the purpose for the encounter, which was plainly investigative,but upon the common understanding that when a police officer turns on hiscruiser's overhead lights, a motorist is not free to ignore the officer,but is under a duty to stop and permit the officer to approach. When apolice officer approaches someone and addresses him or her, without anysurrounding circumstances that suggest that the person is not free todecline to talk to the officer, the encounter that results is consensual— not a seizure — regardless of the officer's purpose.I.N.S. v. Delgado (1984), 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247. The "uncommunicated intention" of the officer in initiating the encounter is not dispositive. 4 LaFave, Search and Seizure (Third Edition), § 9.3(a), at 91.
As noted, I agree that once Deputy Statzer turned on his overhead lights, a stop occurred. A brief, investigative stop is a seizure requiring a reasonable, articulable suspicion, based upon facts specifically pertaining to the encounter, that "criminal activity may beafoot." Terry v. Ohio (1968), 392 U.S. 1, at 30, 88 S.Ct. 1868, at 1884 (emphasis added). In my view, it is not necessary that the police officer be in a position to determine the particular criminal offense that may have been committed — that determination may await the result of the officer's investigative stop — so long as the facts upon which the officer's suspicion is predicated are specific to the particular encounter.
Flight cases — that is, stops resulting from the suspect's sudden flight upon noticing a police officer — frequently involve a suspicion that some criminal activity has occurred, or is occurring, without a determination of the specific criminal activity. See, for example, Illinois v. Wardlow (2000), 528 U.S. ___, 120 S.Ct. 673. In that case, however, the analysis by both the majority of the court and the dissenting justices included a consideration whether the suspect appeared to have noticed the police officer before fleeing. Chief Justice Rehnquist, in his opinion for the court, noted that the suspect "looked in the direction of the [uniformed] officers and fled," and then characterized that conduct as "unprovoked flight upon noticing the police." Id., at 120 S.Ct. 675, 676. For their part, the dissenting justices stressed the assumption, urged by the State of Illinois, that the suspect's flight was motivated by the presence of the police officer. Id. at 679. I agree with Professor LaFave that "surely * * * the burden is on the prosecution to establish * * * that the flight was motivated by the presence of the police officer." 4 LaFave, Op. Cit., § 9.4, 2001 pocket part, at 48.
In the case before us, I cannot say that the State met its burden to establish that the abrupt departure of the Ford Explorer that Blazek was driving was motivated by the presence of Deputy Statzer's cruiser. The evidence established that it was very dark in the area of the encounter, and that Blazek took off only after Statzer turned his spotlight on the Ford Explorer. Blazek may have recognized, earlier, that the other vehicle was a deputy sheriff's cruiser, but that is entirely speculative, and it seems unlikely that Blazek could have recognized it as a cruiser after the spotlight was turned on him — the glare of the spotlight would have made it unlikely that Blazek could have distinguished the vehicle shining it on him as a cruiser. I conclude, then, that the State failed to establish that Blazek's sudden departure was motivated by a desire to evade a police officer; Blazek may have been understandably concerned about the possibility that the occupant or occupants of the vehicle shining the spotlight on him were not police officers, but private individuals with ill intentions.
Had I been persuaded that the State had succeeded in establishing that Blazek's abrupt departure from the scene, without turning his lights on, driving over a wood parking divider, was in response to his awareness that a police officer was interested in his activities, I would uphold Statzer's decision to make an investigative stop as reasonable. Although the issue is close, the time of day, the semi-private nature of the parking area, at least at that hour, and the fact that some car theft, drug and sex offenses had been committed in that location, combined with an abrupt departure upon noticing the presence of a police officer, would, in my view, support a brief investigative stop. Without satisfactory evidence that the abrupt departure followed the driver's noticing that it was a police officer who had approached, I agree that there is not enough in the totality of the circumstances, based upon this record, to justify an investigative stop.